# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANELLE RENEE SCOGGIN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TURNING POINT CENTRAL CALIFORNIA,<br><br>　　　　Defendant. | Case No. 1:20-cv-00140-DAD-SAB<br><br>SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST AMENDED COMPLAINT<br><br>(ECF No. 1)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Danelle Renee Scoggin ("Plaintiff"), appearing *pro se*, filed the complaint in this action on January 28, 2020. (Compl., ECF No. 1.) Following an initial denial of her *in forma pauperis* application, Plaintiff has now been granted *in forma pauperis* status and her complaint is before the Court for screening. (ECF Nos. 2, 4, 6, 7, 8, 9.)

## I.

## SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners);

1

Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); Barren v. Harrington, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim). The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Iqbal, 556 U.S. at 678. "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557). Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

### A. Factual Allegations

Plaintiff names Turning Point Central California, Falcon Court, as the sole Defendant in this action. (Compl. 1-2.)[1] Plaintiff's civil cover sheet indicates the nature of Plaintiff's suit includes the following: (1) rent lease and ejectment; (2) personal injury – motor vehicle; (3) civil rights – housing/accommodations; (4) civil rights – disability; (5) personal property – other personal property damage; (6) prisoner petition – civil rights; (7) False Claims Act; (8) Racketeer Influenced and Corrupt Organizations Act; and (9) environmental matters. (Compl. 68.) While Plaintiff checks these boxes, it appears from the complaint and attachments that Plaintiff's claim is an allegation of housing discrimination based on disability.

Plaintiff claims federal question jurisdiction stemming from housing discrimination. (Id. at 3-4.) Plaintiff states she was subjected to extreme housing discrimination, personal harassment, stress, continuous intimidation, an unsafe environment, and two wrongful evictions. (Id. at 5.) Plaintiff states she is suing Defendant because she is disabled and was unable to comprehend that Defendant took advantage of her and caused affliction to her and her two sons, and Defendant placed her "in their apartment knowing that she was Penal Code Section 290/290.024 [and] 290.01." (Id. at 5.) Plaintiff further states Defendant placed her in the housing for their own personal gain, the home was unsafe, and "[u]nknowing to [her], these were the same people that [Plaintiff] had rented from previously, who had lied to [Plaintiff] and told the same to everyone." (Id. at 6.) Plaintiff states she has police reports to show all the evidence to support the claim and are available upon request. (Id. at 6.)

### B. Documents Attached to Complaint

The facts described above are the only facts put forth by Plaintiff in support of her claim in the body of the complaint. However, Plaintiff attached sixty (60) pages of documents to her complaint. The Court is not obligated to dig through such documents attached to the complaint

---

[1] The Court notes that Falcon Court is a program operated by Turning Point, entitled "Falcon Court Permanent Supportive Housing," and is described as "provid[ing] permanent supportive housing to 34 disabled chronically homeless individuals, and 6 chronically homeless families. The program offers case management, life skills training, education and employment assistance, linkages to community resources, and financial counseling." See Turning Point of Central California, Inc., Falcon Court, http://www.tpocc.org/programs/housing/falcon-court/, (last visited March 19, 2020).

in an attempt to gather the facts underlying Plaintiff's claims. Nonetheless, given Plaintiff's *pro se* status, the Court has taken the liberty of examining the documents attached to see if they have any relevance to potential claims that Plaintiff is attempting to bring, so the Court may inform her of the legal standards relevant to any such claims. As stated below in greater detail, if Plaintiff chooses to file an amended complaint, the Court will not review any portion of a filed complaint that exceeds twenty-five (25) pages, and the Court will not review more than ten (10) pages of attached exhibits.

Plaintiff attaches a declaration of prejudice filed on October 21, 2015, in the Superior Court for the County of Fresno, in an action entitled Warren Properties v. "Danielle [sic] Scoggins," with the case number illegible. (Id. at 10.) The filing is a declaration from Warren Properties stating it would be prejudiced because of the assignment of the particular judge in the matter. (Id.)

Plaintiff attaches a lease agreement with "Village at Shaw," dated December 23, 2015. (Id. at 12.) There is a handwritten note that appears to state that security knocked on the door at 1:48 a.m. on June 15, 2016. (Id.)

Plaintiff attaches a judgment from the Superior Court for the County of Fresno regarding parental obligations dated July 23, 2013, case number 12CEF201214. (Id. at 13.)

Plaintiff attaches a three-day notice to perform or quit dated October 8, 2015, which indicates it is based on an incident where Plaintiff and another tenant were "in the middle of the parking lot arguing and blocking other vehicles from passing through and causing a nuisance." (Id. at 15.) There is a handwritten note that circles the date of the document and states: "After they [k]new I was bring[ing] charges against." (Id.)

Plaintiff attaches a document from March 14, 2016, from the Fresno Housing Authority stating that "[p]er your request your cancelled application was reviewed and based on the information you provided, your application will remain active and the eligibility process will continue." (Id. at 16.)

Plaintiff attaches a handwritten letter dated April 13, 2016, which appears to be written by Plaintiff's grandmother, to the Fresno County Superior Court concerning case number

15CESC02369.  (Id. at 17-19.)  The letter appears to detail Plaintiff's reasons for failing to serve Warren Property through some form of fee waiver program and use of the Los Angeles Sheriff's department, prior to a hearing date.  (Id. at 17.)  The letter then alleges the apartment complex knew Plaintiff didn't know how to file a claim and used such lack of knowledge to their advantage, that Plaintiff had to move approximately six times within the same apartment complex because of infestations of mold and vermin, that Plaintiff's sons became sick from such problems, that Plaintiff never missed paying rent, that she should have just moved out but was waiting on low income housing, and although the family finally convinced her to move out, Plaintiff feels she needs to be compensated for the sickness caused by the infestations.  (Id.)

Plaintiff attaches documents that appear to be from her rental or housing agreement with Defendant.  (Id. at 8-9.)  It appears Plaintiff was paying $89.00 per month with a $600.00 security deposit, and entered into a lease term under the agreement from March 1, 2019, until March 1, 2020.  (Id. at 9.)

Plaintiff attaches a March 19, 2019 housing contract signed by the program director and case manager for Falcon Court, but not apparently signed by Plaintiff, which states that the letter serves as a housing contract, and that "after speaking with you about your recent disregard for the project[']s Policies and Procedures all parties agree that being placed on this contract was the best option since you declined to move complex[e]s and in order for you to continue participating in the Falcon Court Permanent Supportive Housing Project."  (Id. at 23.)  The letter lists various requirements for continuing to stay with the housing project, including agreeing to respect the privacy of other residents, agreeing to stay medication compliant, attending mental health wellness appointments, and other guidelines.  (Id.)

Plaintiff attaches a letter from Defendant dated June 20, 2019, notifying Plaintiff that her apartment locks were changed in violation of the rental agreement, and gave Plaintiff three days to return the original locks or give the office a key to the new locks.  (Id. at 22.)  Plaintiff also attaches a three-day notice to perform issued by Defendant dated July 24, 2019.  The notice states that Plaintiff is in breach of the rental agreement because Plaintiff changed the lock on the front door and refused to allow access to the apartment to make necessary repairs.  (Id. at 20-21.)

1 | Plaintiff attaches a notice of sex offender registration requirement document dated and
2 | signed by Plaintiff on December 3, 2019, indicating she was notified of her duty to register as a
3 | sex offender pursuant to California Penal Code §§ 290-290.024 and 290.01, along with a sex
4 | offender registration change of address or annual update form. (Id. at 26-34.)

5 | Plaintiff attaches a form from the U.S. Department of Housing and Urban Development
6 | ("HUD") entitled "Are You a Victim of Housing Discrimination?" (Id. at 39.) Plaintiff filled
7 | out the form on December 24, 2019, naming Turning Point/Falcon Court as the entity that
8 | allegedly discriminated against Plaintiff. (Id. at 41.) It appears Plaintiff circled various
9 | information concerning what is against the law under the Fair Housing Act including: (1) setting
10 | different terms, conditions, or privileges for sale or rental of a dwelling; (2) conducting property
11 | appraisals in a discriminatory manner; (3) refusing to make reasonable accommodations for
12 | persons with a disability if the accommodation may be necessary to afford such person a
13 | reasonable and equal opportunity to use and enjoy a dwelling; and (4) harassing, coercing,
14 | intimidating, or interfering with anyone exercising or assisting someone else with his/her fair
15 | housing rights. (Id. at 42-43.) The portion referencing reasonable accommodations for
16 | disabilities has a notation stating begin here. (Id.)

17 | It appears Plaintiff attached a description of alleged discrimination to the HUD form. (Id.
18 | at 44.) Plaintiff states she was discriminated based on her disability and was wrongfully taken
19 | advantage of based on lack of her comprehension, and she was subjected to ongoing coercion
20 | and harassment by the making and setting of different terms and conditions. (Id.) Plaintiff states
21 | she believes she was discriminated on the basis of her disability because her "housing rights
22 | were misused" for personal gain, and they intentionally put her "here to cause affliction and
23 | unauthorized permission to enter my dwelling, harass, coerce, intimidate, impose different terms
24 | cause the lack of my disability condition but most of all me and my kids safe and they know
25 | what I'm talking about." (Id. at 44.)

26 | Plaintiff also attaches a child support services disbursement document, and an income
27 | grant verification document for CalFresh and CalWORKs dated January 27, 2020. (Id. at 24-25.)
28 | ///

1. Police Reports

Plaintiff attaches a number of police reports from the Fresno Police Department. Plaintiff attaches a police report that relates to property stolen from Plaintiff's vehicle sometime between July 23, 2015, and August 6, 2015, at 3373 Millbrook Ave. (45-46.) Plaintiff's home address is listed as the same address on the report at the time. (Id.) Plaintiff also attaches a police report related to property stolen from Plaintiff's vehicle on October 6, 2015, again at the Millbrook address. (Id. at 35-38.)

Plaintiff attaches a police report dated July 11, 2016, relating to her report that she heard noises coming from the roof and thought someone was trying to get into the attic at 4754 E. Alamos Ave. (Id. at 62.) Police canvassed the area of the roof, and the neighbor stated they did not hear anyone. (Id.)

Plaintiff attaches a police report from July 18, 2016, relating to Plaintiff's claim that someone tried to pry open her window because the "screen panel was slightly pulled off," and the officer asked if maybe her sons had picked at it, and Plaintiff responded no, "someone is trying to break into her home and have been trying to do so." (Id. at 60.) The report continues: "RP started talking loudly so that 'they' could hear our convo. RP stated that she gave the [apartment] 30 days notice that she is moving and has moved most of her things to storage. RP stated that she wanted the incident documented 'to cover herself.' " (Id.) The report is related to the 4754 E. Alamos Ave. address. (Id.)

Plaintiff attaches a police report that appears to be related to a vehicle being stopped for not coming to a complete stop on February 25, 2018, and the car was released with a warning. (Id. at 55-57.)

Plaintiff attaches a police report relating to an incident that occurred on July 14, 2018, where officers responded to the 3044 N. Fruit Ave. address, Plaintiff's current apartment complex, and checked on Plaintiff's vehicle due to "concern that her vehicle was being tampered with," but reported "no signs of new damage to the vehicle seen." (Id. at 53.)

Plaintiff attaches another police report relating to an incident that occurred on August 20, 2018, at the 3044 N. Fruit Ave. address, where Plaintiff reported being hit with a chair by a

1  neighbor.  (Id. at 66.)

2  Plaintiff attaches another police report concerning vandalism to her vehicle that occurred
3  on September 25, 2018, at the 3044 N. Fruit Ave. address.  (Id. at 50.)

4  Plaintiff attaches a police report dated October 18, 2018, describing an officer's
5  investigation of an incident that Plaintiff alleged to have occurred six or seven months earlier.
6  (Id. at 58-59.)  Plaintiff alleged that unknown suspect(s) stole her identification and social
7  security card from her residence, but did not know exactly when it occurred as there was no
8  forced entry to the apartment.  (Id. at 59.)  Plaintiff stated she was in a program and they have
9  access to her apartment, but she was also dating several women during the time that could have
10 had access, but did not want to provide the names to the police officer, and didn't report the
11 cards missing at the time because she thought she just needed to get new cards.  (Id.)  Plaintiff
12 started receiving letters from an unknown credit bureau about 4-5 months prior, but did not have
13 any of the letters to provide the officer, and when she tried to dispute with the companies, they
14 said she needed a police report.  (Id.)

15 Plaintiff's final police report relates to another vehicle burglary that occurred on
16 November 18, 2018, at 3740 E. Ashlan Ave.  (Id. at 47.)  On this report, Plaintiff's home address
17 is listed as the 3044 N. Fruit Ave. address.  (Id.)

18 **C.    Stated Damages and Relief Requested**

19 Plaintiff states she has pain, suffering, mold exposure, experienced severe harassment,
20 stress, and brutalization of herself and her son.  (Compl. 7.)  Plaintiff is seeking half of a million
21 dollars in damages.

## III.

## DISCUSSION

24 **A.    Federal Rule of Civil Procedure 8**

25 Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim
26 showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must
27 simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which
28 it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal

quotation marks omitted). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

Most of Plaintiff's allegations are vague and conclusory statements alleging housing discrimination based on disability. As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any named Defendants are liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiff does not state the specific dates nor actions that Defendant nor its agents took relating to the alleged discrimination or other misconduct. Plaintiff attaches numerous documents and police reports that the Court reviewed and summarized above, but the documents do not provide any facts that would support a housing discrimination claim based on disability, nor any other apparent claim. The police reports largely relate to burglary or damage to Plaintiff's vehicle and residence, but there is no indication from the documents that Defendant is responsible for the events described in the police reports. Plaintiff attaches a sex offender registration form, and states "they placed me in their apartment knowing that I was Penal Code Section 290/290.024 [and] 290.01," but doesn't specifically claim Defendants did anything in relation to such registration or from Plaintiff's failure to register. (Compl. 5, 26-34.) Plaintiff avers to substandard conditions of the apartment, eviction notices, and being forced to change apartments in the same complex, but Plaintiff does not provide enough factual details to show any actions of a named Defendant were discriminatory based on disability. Many of the documents do not appear to be connected to

Defendant Turning Point, Falcon Court, and Plaintiff does not clearly connect Defendant to any wrongdoing.

For all of these reasons, Plaintiff's complaint does not comply with the requirements of Rule 8(a)(2). The Court will grant Plaintiff leave to file an amended complaint to allow Plaintiff to provide additional and specific factual details to the Court.

## B.   Housing Discrimination Based on Disability

The Court will now provide Plaintiff the legal standards applicable to a claim for housing discrimination based on disability as that is the primary claim it appears Plaintiff is attempting to bring. (Compl. 4-5, 42.) If Plaintiff chooses to file an amended complaint, she is instructed to consider the below legal standards.

The Fair Housing Amendments Act ("FHAA") "extended the Fair Housing Act's protection against discrimination in the sale or rental of housing to those with disabilities." Budnick v. Town of Carefree, 518 F.3d 1109, 1114 (9th Cir. 2008). It is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2)(A). A plaintiff can establish a discrimination claim under a theory of disparate treatment, or disparate impact, or failure to make reasonable accommodations. See Budnick, 518 F.3d at 1114 (9th Cir. 2008); Gamble v. City of Escondido, 104 F.3d 300, 304–05 (9th Cir. 1997).

Disparate treatment means a disabled person is treated less favorably than a non-disabled because of the person's disability. See Budnick, 518 F.3d at 1113-14; Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n. 15 (1977). Disparate impact means actions that while a defendant may not have intended to discriminate against a disabled person, the actions still had a discriminatory effect. See Budnick, 518 F.3d at 1118; Int'l Bhd. of Teamsters, 431 U.S. at 335 n. 15.

Discrimination in the rental of housing includes the "refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [the disabled individual] equal opportunity to use and enjoy a dwelling." 42

U.S.C. § 3604(f)(3)(B). To show discrimination based on failure to provide a reasonable accommodation, a plaintiff must demonstrate that: (1) he or she suffers from a handicap as defined by the Fair Housing Act; (2) the defendant knew or reasonably should have known of the plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) defendant refused to make such accommodation. Giebeler v. M & B Associates, 343 F.3d 1143, 1147 (9th Cir.2003) (citation omitted). Whether a requested accommodation is required "is highly fact-specific, requiring case-by-case determination." United States v. California Mobile Home Park Mgmt. Co., 29 F.3d 1413, 1418 (9th Cir. 1994).

The regulations provide specific examples of what it means to fail to provide reasonable accommodations to a disabled person:

> Example (1): A blind applicant for rental housing wants [to] live in a dwelling unit with a seeing eye dog. The building has a no pets policy. It is a violation of § 100.204 for the owner or manager of the apartment complex to refuse to permit the applicant to live in the apartment with a seeing eye dog because, without the seeing eye dog, the blind person will not have an equal opportunity to use and enjoy a dwelling.
>
> Example (2): Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation of § 100.204 for the owner or manager of Progress Gardens to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have great difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.

24 C.F.R. § 100.204.

As explained above, Plaintiff fails to provide enough factual details to support any claim. If Plaintiff chooses to file an amended complaint, she shall consider the above legal standards.

**C.  Page Limit**

Plaintiff's complaint exceeds sixty pages including attached exhibits. Plaintiff makes only a passing reference to the exhibits in the body of the complaint, rather than directing the

11

1 Court to any specific documents that support any allegations.

2 The Court is not required to sift through excessively lengthy filings to determine
3 Plaintiff's causes of action. If Plaintiff chooses to file an amended complaint, it must include
4 concise but complete factual allegations describing the conduct and events which underlie any
5 claims. Any exhibits should be specifically referenced in Plaintiff's allegations in the main part
6 of the filed complaint.

7 In this regard, Plaintiff's first amended complaint will be subject to a twenty-five (25)
8 page limit, including up to fifteen (15) pages for the pleading and up to ten (10) pages for
9 exhibits. Any part of a filed amended complaint beyond the twenty-five (25) page limit shall be
10 disregarded and stricken as violative of this Court's order.

## IV.

## CONCLUSION AND ORDER

Based on the foregoing, Plaintiff's complaint fails to state a cognizable claim for relief. The Court will grant Plaintiff an opportunity to amend her complaint to cure the above-identified deficiencies to the extent she is able to do so in good faith. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927. Therefore, Plaintiff's first amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff's first amended complaint must be filed within thirty (30) days, and is subject to the twenty-five (25) page limit set forth above.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's office shall send Plaintiff a complaint form;
2. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order;
3. The first amended complaint, including attachments, shall be no more than twenty-five (25) pages; and
4. <u>If Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim</u>.

IT IS SO ORDERED.

Dated: __**March 26, 2020**__

UNITED STATES MAGISTRATE JUDGE